**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cr-00218-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    MICHAEL DARRYL HARDEN,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendant Michael Darryl Harden's Renewed Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) (the "Motion") [#128]  The Motion has been referred to this Court for a recommended disposition.  [#129]  The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion.  For the following reasons, this Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

### I.    BACKGROUND

    On June 9, 2016, the United States filed a Criminal Complaint charging Mr. Harden with one count of armed bank robbery in violation of 18 U.S.C. § 2113(a).  [#1]  Mr. Harden was arrested on June 10, 2016.  [##3, 8]  At the conclusion of a preliminary and detention hearing conducted on June 15, 2016, Magistrate Judge Kathleen M. Tafoya granted Mr. Harden bond, and remanded Mr. Harden into custody pending a bond release hearing.

[#9]  On June 20, 2016, Magistrate Judge Tafoya conducted the bond release hearing and notified Mr. Harden of the conditions of his release, including home detention, and Mr. Harden was released from custody.  [##10, 12]  On June 23, 2016, a grand jury returned a three-count indictment against Mr. Harden, charging him with two counts of bank robbery in violation of 18 U.S.C. § 2113(a) and one count for the use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).  [#14]

On March 1, 2017, Mr. Harden pled guilty to one count of using a firearm in furtherance of a crime of violence.  [##41, 42]  As part of his plea agreement, Mr. Harden admitted to the following:

> On January 28, 2016, [Mr. Harden] entered the Champion Bank at 16790 Centre Court in Parker, Colorado, wearing grey sweats, a fake beard, and a stocking over his head.  He brandished a pistol, and demanded money from the vault, threatening to shoot the bank employees if they did not comply.  The employees complied, and unlocked the bank vault.  [Mr. Harden] then escaped with $45,300 in cash, stolen from the bank.
>
> On June 8, 2016, [Mr. Harden] entered the TCF Bank at 16999 E. Quincy Avenue, in Aurora, Colorado, wearing grey sweats and a mask.  He brandished a pistol, and demanded money from bank employees.  Bank employees put cash into [Mr. Harden's] bag, and also surreptitiously place[d] GPS trackers.  [Mr. Harden] escaped from the bank with $3,985.  Law enforcement followed the signal of the GPS trackers and apprehended [Mr. Harden] shortly thereafter with the cash from the bank and clothing and weapon used to commit the robbery.  [Mr. Harden] admitted his commission of both robberies.

[#42 at 4-5]  On May 30, 2017, Judge Wiley Y. Daniel accepted the plea agreement and granted the United States' motion to dismiss the two counts in the indictment for bank robbery.  [#56]  On that same date, Judge Daniel sentenced Mr. Harden to 84 months incarceration, followed by three years of supervised release, a $100 special assessment fee, and restitution in the amount of $49,285.  [##56, 57]  Mr. Harden was remanded to the custody of the Bureau of Prisons at the time of his sentencing.  [#56]

2

On May 15, 2020, Mr. Harden, through counsel, filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) (the "First Early Release Motion"), requesting that the Court reduce Plaintiff's sentence to time served to be followed by supervised release. [#94]  On June 8, 2020, this Court issued a Recommendation that the First Early Release Motion be denied.[1] [#109]  This Court found that "Plaintiff's medical conditions, coupled with COVID-19, may constitute extraordinary and compelling reasons to justify compassionate release," but concluded that the First Early Release Motion should be denied because Mr. Harden remained a danger to society and a reduced sentence did not comport with the factors set forth in 18 U.S.C. § 3553(a). [*Id.* at 6, 8-10]  On August 5, 2020, United States District Judge William J. Martinez adopted this Court's recommendation, as-modified. [#115]  Specifically, Judge Martinez concluded that extraordinary and compelling reasons did not exist to warrant a reduction in Mr. Harden's sentence, "because [he] d[id] not contend that the coronavirus [wa]s present at his detention facility," but also agreed with the recommendation that Mr. Harden remained a danger to society and that the modified sentence would not comport with the Section 3553(a) factors. [*Id.* at 5-7]

On December 10, 2020, Mr. Harden filed the instant Motion. [#128]  In the Motion, Mr. Harden again seeks a reduction in his sentence to time served to be followed by supervised release. [*Id.* at 10]  The Motion primarily argues that, despite the Court's

---

[1] The Recommendation also addressed Plaintiff's Request for Judicial Recommendation for Transfer to Home Confinement Pursuant to the Cares Act (the "Home Detention Motion"), which sought a recommendation to the Bureau of Prisons that Mr. Harden serve the remainder of his sentence on home detention. [#86]  This Court recommended that the Home Detention Motion be denied for the same reasons that this Court recommended denial of the First Early Release Motion. [#109 at 11]  Mr. Harden did not object to that recommendation and it was adopted. [#115 at 7]

3

denial of the First Early Release Motion, Mr. Harden should now be granted relief, because Mr. Hardin has tested positive for COVID-19 and there has been a recent COVID-19 outbreak at Mr. Harden's facility.[2]  [*Id.* at 3-10]  The government filed a response to the Motion, in which it indicates that Mr. Harden did, in fact, test positive for COVID-19, had minor symptoms, and has since been released from isolation.  [#135 at 3]  Mr. Harden then filed a reply in support of his Motion.  [#138]

## II.    ANALYSIS

As relevant here, 18 U.S.C. § 3582(c)(1)(A)(i) permits a district court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant" the reduction and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission."  Although initially a request for reduction pursuant to Section 3582(c)(1) had to be made upon motion of the Director of the Bureau of Prisons ("BOP"), the First Step Act of 2018 amended the statute to authorize defendants to file their own motions for compassionate release after either (1) fully exhausting all administrative remedies to appeal a failure of the BOP to bring a motion or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.  *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 239.  The government concedes that the warden of Mr. Harden's facility denied his request for early release and thus Mr. Harden has thus exhausted his administrative remedies.  [#135 at 7]

---

[2] In the Motion, Mr. Harden contends that, according to the Bureau of Prison's website, as of December 9, 2020, 451 inmates and 50 staff members at Mr. Harden's facility, FCI Englewood, had tested positive for COVID-19.  [#128 at 1]  As of January 5, 2021, the Bureau of Prison's website indicates that there are 36 inmates and 7 staff members with current positive COVID-19 diagnoses and that 654 inmates and 56 staff have recovered from their COVID-19 diagnoses.  There are no reported deaths resulting from COVID-19.  *See* COVID-19 Cases, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 5, 2021).

4

The applicable policy statement is found in Section 1B1.13 of the United States Sentencing Guidelines, which has not been amended since the passage of the First Step Act. Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that –
>
> (1)   (A) Extraordinary and compelling reasons warrant the reduction; or
>
>       (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

In an apparent contrast to the First Step Act's amendment of § 3582(c)(1), Application Note 4 of § 1B1.13 states "[a] reduction under this policy statement may be granted *only* upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." (emphasis added). Further, Application Note 1 of § 1B1.13, which establishes certain criteria for evaluating extraordinary and compelling circumstances, provides the catchall provision "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." The policy statement, therefore, appears to make a court's decision on whether to grant compassionate release dependent upon a determination by the BOP that a defendant is deserving of relief. Since the passage of the First Step Act, however, a majority of federal district courts have found that "the most natural reading of [the amended] § 3582(c) is

5

that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *7 (S.D. Iowa Apr. 29, 2020). *See also United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (collecting cases); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (collecting cases). This Court agrees with the majority and concludes that a district court has the authority to exercise the same discretion as the BOP when weighing a request for compassionate relief. The deference to the BOP's determination described in the Application Notes to § 1B1.13 "no longer makes sense now that the First Step Act has reduced the BOP's role" by allowing defendants to appeal directly to the court for a reduction. *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).

Some courts have found "extraordinary and compelling reasons" to justify compassionate release where the defendant's serious underlying health conditions place him at high risk of infection and death from COVID-19. *See United States v. McCarthy*, No. 3:92-CR-0070 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (collecting cases involving asthma, diabetes, and compromised immune systems); *United States v. Jenkins*, No. 99-cr-00439-JLK-1, 2020 WL 2466911, at *6-8 (D. Colo. May 8, 2020) (releasing inmate based on age, obesity, and stroke risk); *United States v. Lopez*, No. 18-CR-2846 MV, 2020 WL 2489746, at *3 (D.N.M. May 14, 2020) (analyzing release based on age, high blood pressure, and diabetes). However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597

(3d Cir. 2020). *See also United States v. Little*, No. CR 14-195 KG, 2020 WL 2736944, at *2 (D.N.M. May 26, 2020); *United States v. Nwankwo*, No. 12 CR 31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020) (collecting cases for the proposition that "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional [risk] factors").

Here, Mr. Harden cites his African-American race and medical conditions—asthma and the presence of the sickle cell trait—as unique concerns making him particularly vulnerable to COVID-19. [#128 at 5]  Plaintiff further argues that this vulnerability coupled with his positive COVID-19 test and the outbreak at the facility where he is incarcerated demonstrate extraordinary and compelling reasons to justify compassionate release.[3] [*Id.*]  The Court concludes that Plaintiff's medical conditions, coupled with Plaintiff's positive test for COVID-19 and the recent outbreak at Mr. Harden's facility, may constitute extraordinary and compelling reasons to justify compassionate release.  *See United States v. Harris*, No. 96-40082-01-SAC, 2020 WL 7396917, at *2 (D. Kan. Dec. 17, 2020) (finding that defendant established extraordinary and compelling reasons based upon hypertension diagnosis, African-American race, prior positive test for COVID-19, and high infection rate at facility); *United States v. Hernandez*,  No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. April 2, 2020) (finding the heightened medical risk presented to defendant by the COVID-19 pandemic as a result of his asthma sufficient to constitute extraordinary and compelling reasons).  *But see United States v. Salazar*, No. 1:16-CR-00461-WJ-CG, 2020 WL 6701872, at *3 (D.N.M. Nov. 13, 2020) (citing cases for

---

[3] In his reply to the Motion, Mr. Harden does not dispute the government's contention that he experienced only minor symptoms from COVID-19, but instead states that he "is not yet out of the woods" and contends that "[r]einfection, especially in the carceral setting, is still a real possibility."  [#138 at 2]

7

proposition that "[m]any courts have denied prisoners' motions for compassionate release even when there are significant numbers of active COVID-19 cases at their facilities and even when the prisoners themselves test positive for the virus").

Even if Mr. Harden has established an extraordinary and compelling reason for compassionate release, however, the district court must still consider the factors set forth in 18 U.S.C. § 3553(a) and may only release Mr. Harden if convinced that he is not a danger to the safety of any other person or to the community.  U.S.S.G. § 1B1.13.  This Court believes that Mr. Harden should be required to serve additional time both pursuant to the sentencing factors set forth in Section 3553(a) and because Mr. Harden may continue to present a danger to the safety of the community.  Mr. Harden has admitted to committing two armed robberies, approximately six months apart.[4]  [#42 at 4-5]  He brandished his weapon during each robbery and threatened to shoot a bank employee during the first robbery.[5]  [*Id.*]  These were incredibly dangerous and brazen crimes, that severely traumatized the bank employees.  [##47-1; 52-1; 53-1]  According to one victim, Mr. Harden pointed the gun he brandished directly at the victim's head throughout the encounter.  [#52-1 at 2]  Although these may have been Mr. Harden's first criminal offenses, he admitted during his presentence investigation interview that his girlfriend has complained that he becomes "too aggressive" when consuming alcohol.  [#46 at 8]

---

[4] The fact that the two incidents were separated by a nearly six-month gap belies Mr. Harden's assertion in the First Early Release Motion that his conduct reflects mere "aberrant behavior."  [#138 at 5]

[5] According to that bank employee, Mr. Harden threatened her life (and the lives of others in the bank) multiple times during the robbery of the bank.  [#53-1 at 5-6]

The Court recommends denial of the Motion because it does not comport with the factors set forth in Section 3553(a).[6] *See* U.S.S.G. § 1B1.13 (requiring consideration of the Section 3553(a) factors). Mr. Harden's seven-year sentence represents the statutory minimum for the violation of 18 U.S.C. § 924(c)(1)(A) to which he pleaded guilty. [#42 at 3] Although, as part of the plea agreement, the United States agreed to dismiss the two additional bank robbery charges, Mr. Harden admitted that he had committed the armed robberies, which were brazen, extremely dangerous, and traumatic to his victims. In the Court's view, the approximate 43-month sentence that would result from the grant of compassionate release—a sentence reflecting approximately half of that which was originally imposed—provides insufficient recognition of the seriousness of Mr. Harden's offense and would fail to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence. Based upon its consideration of the Section 3553(a) factors, this Court thus respectfully recommends denial of the Motion. *See United States v. Davies*, No. 17-CR-57 (ERK), 2020 WL 2307650, at *1-2 (E.D.N.Y. May 8, 2020) (finding that grant of compassionate release—which would result in defendant serving only three years and three months of an eight-year sentence for a bank robbery in which the defendant forced bank employees to comply with his demands at gunpoint— "would make a mockery of the considerations enumerated in 18 U.S.C. 3553(a)"); *United*

---

[6] Pursuant to 18 U.S.C. § 3553(a), in determining the particular sentence to be imposed, the Court shall consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant effective training and treatment; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range applicable to the category of offense committed; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims.

States v. Cantatore, No. CR 16-0189 (ES), 2020 WL 2611536, at *1, 5 (D.N.J. May 21, 2020) (finding that Section 3142(a) sentencing factors did not support compassionate release for defendant who had served 62 months of 162-month sentence for committing three bank robberies with a paint gun disguised to look like a real gun); see also Rodriguez-Aguirre v. Hudgins, 739 Fed. App'x 489, 491 (10th Cir. 2018) (finding that BOP did not abuse its discretion in denying compassionate release/reduction in sentence based upon the "seriousness of defendant's offense"); United States v. Willis, 382 F. Supp. 3d 1185, 1189 (D.N.M. 2019) (denying motion for compassionate release where defendant had served only five months of a 24-month sentence based upon the seriousness of the underlying offense); cf. United States v. Scott, No. CR 95-202-CCB-2, 2020 WL 2467425, at *1, 5 (D. Md. May 13, 2020) (finding that "the 25 years in prison [defendant] ha[d] already served adequately reflect the seriousness of his conduct and recognize the need for deterrence, public safety, and respect for the law" with regard to the defendant's participation in two completed and one attempted bank robberies in which firearms were involved but no one was physically injured); United States v. Copeland, No. 02-CR-01120 (FB), 2020 WL 2537250, at *3 (E.D.N.Y. May 19, 2020) (finding that Section 3553(a) factors supported compassionate release where defendant—convicted for being "the getaway driver in a 2003 bank robbery that saw no one harmed and $3,700 stolen"— had already served 19 years of a 23-year sentence).

The Court also finds denial of the Motion appropriate, because Mr. Harden may pose a continuing danger to the community. Mr. Harden asks the Court to consider his "exemplary behavior" while in custody including his lack of disciplinary infractions, his sobriety and completion of a drug education program, and his willingness to take mental

health medications. [#128 at 8-9] Mr. Harden's sobriety and completion of a drug education program are encouraging given that the Presentence Investigation Report ("PSI") indicates that drug use may have contributed to his conduct. [#46 at 8] Similarly, Mr. Harden's willingness to comply with prescribed mental health medications is promising as the PSI indicates that Mr. Harden suffers from mental health issues including severe depression. [*Id.* at 4, 7]. There is no indication in the record, however, that Plaintiff has participated in mental health counseling or any other programs specifically designed to address the factors that the PSI indicated may have contributed to the criminal offense, including chronic traumatic encephalopathy ("CTE") and a gambling addiction.[7] [*Id.*] Nor is there any other evidence—such as the opinion of a medical professional—indicating that those conditions are well-controlled. Indeed, during the PSI interview, Mr. Harden indicated that his gambling addiction was one of "many issues" that contributed to his conduct [*id.* at 7], yet Mr. Harden's gambling addiction is not even mentioned in the Motion. Moreover, Mr. Harden's ability to comply with prison regulations provides only minimal guidance as to his potential danger to the community if he were granted a reduction in sentence to time served as requested.[8] Finally, while the Court is encouraged that Ms. Mettam and her mother remain in Mr. Harden's life and continue to support Mr. Harden [#128 at 9-10], that support does not overcome the Court's conclusion

---

[7] In his reply in support of the Motion, Mr. Harden contends that "he has voluntarily completed rehabilitative programming aimed at addressing his substance abuse and mental health history, including taking mental health medications" [#138 at 5], but he fails to cite to any evidence in the record to support that contention.

[8] In contrast to his ability to comply with prison regulations, Mr. Harden's ability to comply with his pretrial release conditions does give some indication of his willingness to obey court orders and provides some evidence mitigating his danger to the community. Nonetheless, for the reasons articulated above, the Court still believes that Mr. Harden may present a danger to the community.

that Mr. Harden may present a danger to the community if he is released and faced with the temptations and financial pressures of life outside the structured prison environment. For this additional reason, this Court respectfully recommends denial of the Motion.

### III. CONCLUSION

For the reasons set forth herein, the Court respectfully **RECOMMENDS** that the Renewed Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) [#128] be **DENIED**.[9]

DATED: January 5, 2021

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[9] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).